# Moss v. Maddux.

## (Nashville. March 15, 1902.)

BILLS AND NOTES. *Alteration of, renders void, when.*

A material alteration of a note—*e. g.*, its amount—made by the principal without the payee's consent or knowledge, and with the purpose and effect of defrauding him, operates, nevertheless, to render the note void as to innocent sureties, and to release them *in toto* from liability thereon; an action, even for the true amount due thereon, not being maintainable against them by the payee.

Cases cited: Crockett *v.* Thomason, 5 Sneed, 344; Organ *v.* Allison, 9 Bax., 459; McVey *v.* Ely, 5 Lea, 438; McDaniel *v.* Whitsett, 96 Tenn., 10; Taylor *v.* Taylor, 12 Lea, 714; Stephens *v.* Davis, 85 Tenn., 271.

---

### FROM PUTNAM.

---

Appeal from the Chancery Court of Putnam County. T. J. FISHER, Ch.

ALGOOD & FINLEY for Moss.

A. W. BOYD for Maddux.

WILKES, J. Complainant in his bill charges that one Lem Maddux, as principal, and defendants as sureties, executed and delivered to him a note for $185.00, and he seeks to recover the

same and interest. Lem Maddux, the principal, was not sued, being a non-resident and insolvent. The note was exhibited with the bill and comes to this Court in its original shape.

The defendants, W. H. Maddux and R. F. Maxwell, filed a general plea of *non est factum.*

Upon trial in the Court below, the Chancellor gave judgment for the $185.00, and interest upon it, and defendants appealed. The Court of Chancery Appeals sustained the plea of *non est factum,* and reversed the Chancellor, and refused any relief, and complaint has appealed to this Court.

The Court of Chancery Appeals bases its holding upon the fact found by it, that after the sureties had signed the note, an attempt was made to alter it so as to make it a note for $285.00 instead of $185.00. That Court reports that the figures in the upper left hand corner of the note had evidently been tampered with, so that they appear to be $285.00 and not $185.00, and that some effort was made to change the words written in the body of the note, but the effect was slight—that the body of the note still clearly reads one hundred and eighty-five, though it can be seen that it has been tampered with. An inspection of the note shows this finding to be correct.

They find that complainant received this note as being for $285.00, and surrendered other secured claims to that amount in consideration of the

note; that he was an old man and unable to read, and his wife inspected the note, and relying on the figures, reported that it was a note for $285.00, and thereupon complainant so received it.

The Court of Chancery Appeals finds that the defendant sureties signed the note for $185.00; that after it was written it was altered; that complainant was in no way responsible for any alterations in the note; that the parties sued are the brother and brother-in-law of the principal, who had fled the country; that complainant, when he took the note, did not know it had been changed or altered.

The defendants did not testify on the trial, but it was proven that they admitted signing the note for $185.00, but denied signing it for $285.

The Court of Chancery Appeals find that the defendants did not at any time, before or after the note was signed, consent to any alteration, and that it was altered after it was executed and before it was delivered.

The Court of Chancery Appeals report that this alteration must defeat any recovery on the note, and cite as sustaining this contention, *Crockett* v. *Thomason,* 5 Sneed, 344; *Organ* v. *Allison,* 9 Bax., 459; *McVey* v. *Ely,* 5 Lea, 438; *McDaniel* v. *Whitsett,* 12 Pickle, 10; *Taylor* v. *Taylor et al.,* 12 Lea, 714.

In each of the cases cited by that Court, the alteration was made with the knowledge and con-

sent of the payee, or holder of the note, and would, if enforced, enure to his benefit, and was, therefore, fraudulently made.

The suit was brought upon the instrument as altered, and to enforce it as it stood after alteration, except that in the case of *McDaniel* v. *Whitsett,* there had been an attempt to efface the alteration. In that case the alteration had been fraudulently made by the holder in order to fix a lien. He afterward undertook to erase this, and the Court held that after the alteration had been fraudulently made, and the validity of the note thus destroyed, the erasure could not restore the validity of the note and make it collectible by the party guilty of the alteration.

In the present case there is no fraud whatever on the part of complainant. On the contrary, he has been himself defrauded, no doubt by the maker of the note, by being misled into the belief that the note was for $285.00, when it was for only $185.00.

He made no attempt at erasure or correction of the note, but sued upon it as a note for $185.00, for which amount defendants admit they signed and bound themselves.

The grounds upon which a party guilty of altering an evidence of debt is not allowed to recover are twofold, one to prevent a party from profiting by his own fraud, and the other to insure the identity of the paper and prevent the

Moss *v.* Maddux.

substitution of a different one. The object is to inflict a penalty on the wrongdoer and protect the other party.

But it has also been held, and more to the point, in *Stephens* v. *Davis,* 1 Pickle, 271, that a note thus altered, after it was signed, is void and uncollectible in the hands of a *bona fide* or innocent purchaser.

This is upon the theory that when the instrument is once altered, to the prejudice of the maker, or any one of them, it becomes void as to the parties who might be affected by the alteration, and, being void, no right could attach in the hands of even an innocent transferee; in other words, he can stand upon no higher ground than the party who made the alteration, and, having taken a void instrument, it is void in his hands.

Following this decision, we are constrained, though it works a gross injustice to complainant, to hold that he cannot recover, and we, therefore, affirm the decree of the Court of Chancery Appeals. In accord, see Vol. 2, pp. 177, 179; Daniel on Neg. Instruments, Secs. 1384, 1405.